UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| KINGS ROAD HOLDINGS VIII LTD, )<br>and KINGS ROAD INVESTMENTS LTD, )<br>  )<br>Plaintiffs, )<br>  )<br>v. )<br>  )<br>PAUL A. MOORE; )<br>RED CANYON ADVISORS, LLC; )<br>MOORE INVESTMENTS, INC.; and )<br>RED CANYON ADVISORS, LLC; )<br>Defendants )  | 1:12-cv-08657-RWS<br>ECF case |

**PLAINTIFFS' RESPONSE TO**

**DEFENDANTS' MOTION TO SET ASIDE THE ENTRIES OF DEFAULT**

Plaintiffs, through their attorney, by this paper and supporting declarations and exhibits to same, and in further reliance on the Complaint (DE # 1), hereby respond to the Defendants' <u>Motion to Set Aside the Entries of Default</u> (DE # 24) and supporting papers.

**I.    THE LAW**

Plaintiffs agree with defendants that in this circuit the test for good cause under Fed. R. Civ. Proc. 55(c) is (1) whether the default was willful, (2) whether setting aside the default would prejudice the adversary, and (3) whether a meritorious defense is presented.

**II.    FACTS AND ARGUMENT**

**A.    Paul Moore Intentionally Chose to Fail to Answer or Otherwise Respond to the Complaint within 21 Days After It Was Received by Him through His Wife.**

What his own declaration, if given credence by this Honorable Court, establishes is that Paul Moore chose to be the self-appointed arbiter of whether service of process was sufficient. Implicit in Paul Moore's declaration (DE # 25) is a second statement—one that he does not make explicit because it reveals the deficiency of his argument. The statement Mr. Moore makes is "My wife was served with the Complaint on January 30, 2013. However, due to a miscommunication with my wife, I believed she had not been personally served." The implicit statement Mr. Moore makes but omits to place before the Court is as follows: "I therefore chose not to respond to the complaint."

Put otherwise, Paul Moore's declaration is a statement that he intentionally chose not to respond to the complaint. Moore's statement imputes to him that he had the belief that service was improper. However, holding such a belief would have been cause for him to respond to the complaint by filing *by February 20th* a response to the complaint pursuant to Fed.R.Civ.P. 12(b)(5) constituting a motion to dismiss that claimed insufficient service of process. However, implicit in Mr. Moore's declaration is that he chose *not* to respond in that manner or by other motion or answer. This is not an instance where an individual who was served sought to respond but failed to do so due to mistake or neglect—this is an instance where the defendant flatly decided not to respond. Thus, Paul Moore's default was intentional and willful.

Plaintiffs note a policy implication of Mr. Moore's argument, if accepted: If this Honorable Court accepts Paul Moore's declaration as sufficient reason to set aside the default entered against him, that would open a significant loophole in abode service whereby any defendant could not respond if such service was made, and by not responding wait for weeks or months to delay the case. Then, if the defendant at any

point viewed it in his advantage, he could appear and claim to have misunderstood a communication from the individual of suitable discretion who received the copy of the summons and complaint in hand. In other words, it would let a defendant wait and see what happened—the tactic Mr. Moore engaged in here.

Based on the proof of service (DE # 5) and Mr. Moore's declaration, there can be no doubt but that by early February Mr. Moore had in his hand a summons that directed him to respond within 21 days of receiving it and a copy of the complaint and other service documents. There can be no doubt but that Mr. Moore chose to disregard this directive. Thus, while Paul Moore through his attorneys claims that he "Did Not Willfully Ignore the Complaint," (Memorandum in Support, p. 5, DE # 28), Paul Moore's declaration establishes the opposite: that he, in fact, willfully ignored the complaint. Moreover, Mr. Moore chose to ignore a complaint that, as far back as September of last year, when he received and then decided not to respond to the demand letter, he knew in advance would be filed against him. Declaration of Richard Gerber; Palmer Declaration, para. 7.

### B.    Paul Moore's Declaration Deserves No Credence.

Mr. Moore's declaration contains no specificity as to: a) the nature and content of communication by his wife, b) how he misunderstood it, c) why that misunderstanding led him to determine that he had not been served. Furthermore, it is not supported by any declaration by his wife, Kathleen ("Kathy") Moore. His declaration is so nebulous and general that its content essentially amounts to no more than a statement about Paul Moore's interior mental state. This self-serving tactic should not be countenanced by this Honorable Court.

In addition to its lack of testable specificity and its dearth of any corroboration, additional facts and factors establish that Mr. Moore's declaration should not be given credence by this Honorable Court:

1) Paul Moore has a practice of avoiding receiving mailings of a serious nature when they are from an unknown sender. Declaration of W. Murley Palmer, Esq. ("Palmer Declaration"), para. 5; and

2) Paul Moore falsely denied his identity to a process server last fall. Declaration of Richard Gerber; and

3) Paul Moore did not appear and respond to a complaint in a civil suit against him in Nevada in 2011; and after a default judgment was entered against him, he appeared and claimed that the receipt for delivery of a certified letter delivered to his house had a signature unrecognizable to him—when the signature was identifiably that of his wife, Kathleen Moore (with a minor portion of the interior upstroke of the letter "M" missing due to the ink clearly not coming out on that second upstroke). Exhs. D to G to Palmer Declaration.

Paul Moore is not a typical defendant. Rather, he is an individual who has a pattern of engaging in improper tactics in lawsuits—tactics he decides are to his advantage. Plaintiffs respectfully suggest that the facts before this Honorable Court collectively establish that Paul Moore's declaration is a tactic that should not be rewarded and that it deserves no credence.

If this Honorable Court has any inclination to give the declaration credence and to find it to benefit Mr. Moore, plaintiffs ask that it first require Mr. Moore to file a detailed declaration as to the precise nature of the alleged communication from his wife and his

claimed misunderstanding of it and also a supporting declaration from his wife and allow those to be addressed by the plaintiffs through a responsive filing. Kathleen Moore, Mr. Moore's wife, has an evident interest in the outcome of this case, as she is the president of defendant Moore Investments, Inc. Exh. C to Palmer Declaration.

### C. The Two Defaulted Business Entities Do Not Offer An Explanation for Their Defaults.

The defaulted business-entity defendant MBC Global, LLC, presents no explanation for its default. It and the other defaulted business-entity defendant, Red Canyon Advisors, LLC, which similarly offers no explanation for its default, improperly conflate the entry of the default with the default.

A default occurs on 12:01 AM the day after a defendant's response is due but is not filed and served. The entry of default pursuant to Fed.R.Civ.P. 55(a) is the clerk's official recognition of the default—it is not the default. Put otherwise: the default does not commence upon its entry but from the time it, in fact, occurred. If a defendant seeks to have a default set aside, it must offer an explanation that addresses the default over the length of its existence—not from the time it was entered upon the docket.

The docket of this case and filed proofs of service establish that the default of MBC Global, LLC, occurred the start of April 2, 2013, as its answer or other response was due on April 1, 2013. DE # 11. The default of Red Canyon Advisors occurred the start of April 11, 2013, as its answer or other response was due on April 10, 2013. DE # 10. Both of these defaults occurred *before* now-counsel for the entity defendants even raised with plaintiffs' counsel the issue of his in the future *potentially* representing the entities.

Here, the defaulted business-entity defendants do not offer an explanation by way of declaration because there is no good explanation—to seek to offer an explanation would reveal that Paul Moore, who has now retained counsel to represent the entities, made decisions on behalf of the entities not to timely respond to the summons—decisions that if set before this Honorable Court would further undermine the credibility of Mr. Moore's argument that he did not choose himself to default as an individual defendant.

Defendants instead seek to mislead this Honorable Court by characterizing the summonses and complaint and other service documents as "technical service" on the Secretary of State.  <u>Memorandum in Support</u>, p. 5.  This misleads the Court in two ways: the service on Red Canyon Advisors, LLC, was through its registered agent, which is standard service on a corporation—not through the Secretary of State.  Secondly, service on the Illinois Secretary of State requires contemporaneous mailings of copies of the service package to the address of the registered agent and that address which the server believes is the best address for the service package:  that being Paul Moore's residence, as is set forth in the filed proof of service.

Public records indicate that Paul Moore is the sole manger of MBC Global, LLC.  Exh. B to <u>Palmer Declaration</u>.  Similarly, the public record, as the complaint alleges, establishes that Moore controlled/controls Red Canyon Advisors, LLC.  <u>Palmer Declaration</u>, para. 12.  Moore himself is now being sued personally in Nevada for not paying Red Canyon Advisors, LLC's legal fees.  Exhs. D to G to <u>Palmer Declaration</u>.

Service on the defaulted-entity defendants was not "technical service."  A copy of the entire service package on MBC Global, LLC, was sent by certified mail to

6

Mr. Moore's residence on March 11, 2013.  DE # 11, p. 2.  Moreover, as Moore himself received the summons to himself as an individual defendant with a copy of the complaint on or about January 30th, he knew weeks before MBC Global, LLC, and Red Canyon Advisors, LLC, were served that each was a defendant in this case and would need to retain counsel.

Plaintiffs respectfully submit that Moore does not present to this Honorable Court declarations on behalf of the defaulted entities because he has no good explanation for their defaults and that for him to reveal this would be to fatally undermine his motion to set aside his own default.

Having no good explanation as to why their defaults are not willful, the defaulted-entity defendants seek to distract this Honorable Court's attention from their lack of any satisfactory explanation for their defaults.  Their tactic is to attack plaintiffs through their counsel for requesting that the Clerk enter defaults that had already occurred.  Defendants ignore that it is black-letter law that an attorney cannot make a request on behalf of a client by whom he has not been retained—as it is the very act of retention of the attorney that creates the attorney-client relationship that allows an attorney to act on behalf of a client.

### D. Further Delay Prejudices the Plaintiffs.

Paul Moore for years has been a registered agent for two business entities that were (and are) subject to suit.  Exhs. B and C to Palmer Declaration.  Paul Moore is an individual with an extraordinarily extensive history of decades of near constant involvement in civil litigation.  Palmer Declaration, para. 13.  Mr. Moore could have easily followed up on the notice left by the process server in mid-January or otherwise

made himself available to receive service not only on his own behalf but as a registered agent/officer/member of the three defendant business entities.  After Paul Moore himself as a defendant received a copy of the summons and complaint through his wife at the end of January, Mr. Moore could have retained counsel and had the counsel contact plaintiffs' counsel to arrange for service for the business entities in early to mid-February.

Put otherwise:  Paul Moore months ago could have chosen to confront squarely claims he now suggests through his attorneys—but not through any declaration under the penalty of perjury—have absolutely no merit.

Mr. Moore chose not to confront the claims against him and the entities he controls.  Instead, he chose a path of avoidance—a path he intentionally embarked on when he falsely denied his identity to the process server last September.  It is clear from the totality of the evidence that Paul Moore made a calculated decision that avoidance of this lawsuit and resultant delay was to his and his companies' benefit—until he decided otherwise when a default judgment against him and the businesses he controls started to appear on the horizon.

To reiterate, Paul Moore is not a typical defendant.  Delay provides an individual such as Paul Moore—one who does not hesitate to seek to deceive a process server—time to successfully destroy evidence he himself possesses or controls, as over time the destruction and removal of evidence becomes harder and harder to identify, to trace, and to establish.  Delay also provides an individual such as Paul Moore with the opportunity to seek to persuade over time others that were involved in his enterprise to collude with him in the removal, destruction, and concealment of evidence.  Delay further provides an individual such as Paul Moore with time to hide assets.  The public record establishes that

8

Paul Moore has employed delay as a tactic in the past, namely when his company declared bankruptcy the day of a trial.  Complaint, pp. 6–7, paras 24–26; clerks' dockets of cases referenced: USBC SD TEX case no. 07003205 and USBC ND ILL case no. 07 B 06766 incorporated herein.  Paul Moore has more recently used delay as a tactic—not appearing in a civil suit against him in Nevada and, after a default judgment was entered against him, claiming the receipt for delivery of a certified letter delivered to his house had a signature unrecognizable to him—when the signature was identifiably that of his wife, Kathleen Moore.  Exhs. D to G to Palmer Declaration.

  Evidence on the World Wide Web is easily found and can be highly probative—and it is easily removed.  Paul Moore has already started to remove such evidence.  An aggregator profile page clearly refers to Mr. Moore and it links to a LinkedIn profile of him.   Exh. H to Palmer Declaration.  Yet Mr. Moore's LinkedIn profile is now denuded of any specifics at all and has only one connection—to himself.  Exh. I to Palmer Declaration.  Clearly, Paul Moore has removed its content, thereby removing evidence of his ties to the business-entity defendants and to witnesses to the facts at issue in this case—witnesses whose identities he knows the plaintiffs know as, as to a number of them, their names were set forth in the demand letter.  Palmer Declaration, para. 8.  Paul Moore's assistant's profile, that of Sherie Swiontek, has no mention of any association with MBC Global, LLC or Red Canyon Advisors, LLC, and shows that she recently left the employment of another company with which Mr. Moore is associated: Telacuba Holdings, Inc.  Exh. J to Palmer Declaration.  Contrastingly, the profile of another associate of his, Gary Tadych, states an ongoing employment association with MBC Global, LLC, an entity that Mr. Moore's attorneys have communicated was "defunct."

Exh. K to Palmer Declaration; DE # 27-2, p. 4.  It is reasonable to infer that Mr. Moore is taking nonvisible steps in the physical realm to remove evidence that parallel those he has taken in the realm of the Internet.

Further delay damages plaintiffs.   Delay will allow Mr. Moore, acting both as an individual who has a record of using unfair tactics to seek to protect himself and as the controller of the defaulted-entity defendants who is seeking to protect himself from his exposure through the entities, the opportunity to remove more evidence from the reach of the plaintiffs and to reach out to potential witnesses so as to coordinate improperly their stories and to remove probative evidence from the reach of the plaintiffs.  For these reasons, setting aside the defaults is prejudicial to the plaintiffs.

**E.     Defendants Ignore Essential Parts of the Complaint in their Effort to Suggest That They Have Potential Meritorious Complete Defenses, and Tellingly, Do Not Contest the Factual Allegations of the Complaint.**

The standard method to establish a suggestion of a meritorious complete defense is for a defendant to deny the factual allegation of a complaint.  Here, Mr. Moore and the defaulted companies he controls do not contest the complaint's damning factual allegations through any declaration subject to the penalty of perjury.  Rather, the defaulted defendants directed their attorneys to put before this Honorable Court in the Memorandum in Support  factual statements *not* established in the record of this case at this point: "Like many other real estate projects that began in 2007, the subsequent market crash caused the project to fail" and "the investment memorandum that plaintiffs contend was 'fraudulent' because it did not disclose a particular lawsuit contains a non-

reliance provision, so there could be no reasonable reliance as a matter of law."
Memorandum, pp. 2–3.

Defendants in their argument instead cherry-pick from the complaint—by way of example arguing that there is a meritorious defense to the RICO count because there is a four-year statute of limitations, while ignoring that the complaint alleges predicate acts within the past four years. Complaint, p. 20, para. 103. Similarly, defendants argue that the fraud claims are barred by a statute of limitations while ignoring that the complaint alleges that Paul Moore knowingly delivered fraudulent financial statements to the plaintiffs' investment manager in Manhattan on August 12, 2008. Complaint, pp. 17–18, paras. 89–90. Their arguments as to lack of personal jurisdiction similarly ignore this allegation of Paul Moore's business activity in Manhattan and other alleged facts set forth in the complaint. Defendants make a series of incomplete and conclusory arguments. When the allegations set forth in the complaint are examined in full, none of the arguments advanced by the defendants amount to a plausible potential *complete* defense. (If and when any motion to dismiss is filed that presents full arguments to the Court, the plaintiffs in their response thereto shall at that time address in full all arguments made.)

### III. CONCLUSION

WHEREFORE, Plaintiffs respectfully request that the Honorable Court, after hearing argument on this matter on May 22, 2013, deny the motion of the defaulted defendants to set aside their defaults.

If upon its prehearing review of the papers, this Honorable Court has any inclination to give Paul Moore's declaration credence and to find it to benefit Mr. Moore, plaintiffs request that the Court order the hearing reset to a later date, and require

11

Mr. Moore to first file a detailed declaration as to the precise nature of the claimed miscommunication from his wife and his claimed misunderstanding of it and also require the filing of a supporting declaration from his wife and allow those declarations to be addressed by the plaintiffs through a responsive filing before the hearing of the motion.

Dated: May 1, 2013          Respectfully submitted,

Plaintiffs Kings Road Holdings VIII Ltd and

Kings Road Investments Ltd

By their attorney


s/ W. Murley Palmer
_____
W. Murley Palmer, Esq.
ALECTO LAW GROUP, LLP

Admitted *Pro Hac Vice*

(Admitted: Massachusetts, BBO # 563978)

87 Wendell Street, Suite 200
Boston, MA 02110-3037
Tel: 617.435.1206
Fax: 617.209.1152
Email: alectolawgroup@gmail.com

## CERTIFICATION OF SERVICE

I certify that this paper and the accompanying declarations and exhibits to same will be served on all counsel of record on this day May 1, 2013, through the ECF system as a NEF email pursuant to the Federal Rules of Civil Procedure and the Local Rules.

s/ W. Murley Palmer          DATED: May 1, 2013
_____
W. Murley Palmer, Esq.